UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARK A. BOWEN | ) |
| | ) |
| PLAINTIFF | ) |
| vs. | ) |
| | ) |
| DITECH FINANCIAL LLC, f/d/b/a | ) |
| GREEN TREE SERVICING LLC | ) |
| | ) |
| THE FEDERAL NATIONAL MORTGAGE | ) |
| ASSOCIATION | ) |
| | ) |
| DEFENDANTS | ) |

**COMPLAINT**

**I.   INTRODUCTION**

The Plaintiff, Mr. Mark Bowen, brings this action against Ditech Financial LLC and the Federal National Mortgage Association (FNMA) for repeated coercive and harassing attempts to collect on monies not owed by Mr. Bowen.  These unfair and misleading debt collection attempts began just two months after settling previous allegations of unfair debt collection practices against Green Tree Servicing and one month after reinstating the modified loan.  Despite numerous attempts by Mr. Bowen and his counsel to correct the collections, Green Tree, which later changed its name to Ditech, continued to take money from Mr. Bowen's bank account that he did not owe and attempted to collect on additional monies alleged owed, all of which had been resolved by the reinstatement of the loan.  Mr. Bowen now brings this action pursuant to the common law claims of Fraud/ Fraudulent Misrepresentation and statutory claims of violation of the Maine Unfair Trade Practices Act 5 M.R.S.A. §205-A et seq.; Fair Debt Collection

1

Practices Act, 15 U.S.C. § 1692 *et seq.* and Maine Fair Debt Collection Practices Act, 32 M.R.S.A. § 11001 *et seq*. (hereinafter collectively known as the ''FDCPA''), the Real Estate Settlement Procedures Act 12 USC §1024.1 et seq. ("RESPA" or "Reg. X").

## II. JURISDICTION AND VENUE

1. The jurisdiction of this Court is conferred by 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

2. Venue is proper as the Plaintiff is a resident of Androscoggin County, Maine; all relevant events occurred in this District, and the Defendants were doing business in Maine during all relevant times.

## III. PARTIES

3. Plaintiff Mark A. Bowen ("Mr. Bowen") is a natural person residing in Minot, Maine with his two minor children.

4. Defendant Ditech Financial LLC is a limited liability corporation organized under the laws of Delaware with a principal place of business in Rapid City, South Dakota.

5. On or around August 31, 2015, Ditech Mortgage Corp joined with Green Tree Financial LLC to form Ditech Financial LLC. A true and accurate copy of a letter from Green Tree/Ditech explaining the change to Mr. Bowen is attached hereto as Exhibit 1 and incorporated herein by reference.

6. Upon information and belief, Ditech Financial LLC took on the assets and liabilities of Green Tree Servicing LLC.

7. Throughout the complaint, "Green Tree" and "Ditech" refer to the same entity, now known as "Ditech Financial LLC."

8. At all times relevant to this Complaint, Green Tree serviced Mr. Bowen's loan and then combined with Ditech who currently services Mr. Bowen's loan.

2

9. At all times relevant to this Complaint, the Federal National Mortgage Association ("Fannie Mae") was and remains the investor and/or owner of Mr. Bowen's loan.

10. Fannie Mae is a government-sponsored enterprise with headquarters in Washington DC.

11. Fannie Mae hired Ditech (f/d/b/a Green Tree) to conduct transactions involved in the servicing of Mr. Bowen's loan.

12. FNMA was and remains the principal over its agent, Ditech regarding the servicing of Mr. Bowen's loan.

13. At all relevant times to this Complaint, Ditech acted within the scope of its agency relationship with FNMA.

14. Green Tree/Ditech treated Mr. Bowen's loan as if it were in default when it took on the servicing of the loan.

15. Ditech engages in the business of collecting debts in this state.

16. Ditech regularly engages in the enforcement of security interests securing debts.

17. Ditech collects debts using the mails and telephone, and Ditech regularly attempts to collect debts alleged to be due to another.

18. Ditech is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), 32 M.R.S.A. §§ 11002(6) and 11003(7)(C).

## IV.   FACTS

19. On October 20, 2005, Mr. Bowen and his now-ex-wife, Nancy E. Bowen, executed and delivered to Bank of America, N.A. a certain promissory note in the amount of $204,422.00.

20. To secure said promissory note, on December 20, 2005, Mr. Bowen and Nancy Bowen executed a mortgage deed in favor of Bank of America, N.A., securing the property located at 17

Orchard Lane, Minot, ME 04258, which mortgage deed is recorded in the Androscoggin County Registry of Deeds in Book 6643, Page 97.

21.     The Mortgage Deed was then allegedly assigned to BAC Home Loans Servicing, LP by virtue of an Assignment of Mortgage dated June 13, 2011 and recorded in the Androscoggin County Registry of Deeds in Book 8185, Page 224.

22.     The Mortgage Deed was then further allegedly assigned to Green Tree Servicing LLC by virtue of an Assignment of Mortgage dated June 18, 2013 and recorded in the Androscoggin County Registry of Deeds in Book 8711, Page 121.

23.     In 2012, Mr. Bowen fell behind on the subject loan, which was then serviced by Bank of America, due to his divorce from Nancy Bowen.

24.     Mr. Bowen applied for a loan modification through Bank of America and in February 2013, Mr. Bowen received a Fannie Mae Trial Period Plan.

25.     The Plan required three payments of $928.24 due on March 1, April 1, and May 1, 2013.

26.     The Plan stated that, after the trial plan payments were made on time and if Mr. Bowen continued to meet all of the eligibility requirements of the modification program, his mortgage would be permanently modified.

27.     Mr. Bowen accepted the Trial Period Plan offer and made all three payments timely to Bank of America.

28.     On May 30, 2013, Bank of America sent Mr. Bowen a permanent Fannie Mae Loan Modification Agreement ("Loan Modification Agreement") with an effective date of July 1, 2013. The Loan Modification is attached hereto as Exhibit 2. The new monthly payment on the loan would be $930.67 and would include principal, interest, taxes, and insurance. The first payment was due July 1, 2013.

29. Mr. Bowen signed and returned the Agreement to Bank of America in a timely manner.

30. Green Tree initiated a matter captioned *Green Tree Servicing LLC v. Mark A. Bowen, et. al,* Docket No. AUSBSC RE 2014-00044 (State of Maine Superior Court, Androscoggin) ("foreclosure action") on March 10, 2014.

31. Mr. Bowen amended his answer and added counterclaims in the action on January 5, 2015. As alleged in Mr. Bowen's counterclaims in the foreclosure action, including claims for Fraud, and Negligent Misrepresentation and violations of the Maine and Federal Fair Debt Collection Practices Act, Real Estate Settlement Procedures Act, and Maine Unfair Trade Practices Act, Green Tree failed to implement the permanent modification bringing the loan current and continued to attempt to collect on the pre-modified terms of the loan and monies not owed by Mr. Bowen.

32. The foreclosure action was transferred to the Business and Consumer Docket on January 22, 2015 and the docket number changed to BCD-RE-15-01.

33. On April 17, 2015, the parties entered into a confidential settlement agreement and release.

34. The parties filed a Stipulation of Dismissal of the foreclosure action dated April 30, 2015 stating that "[e]ach party shall bear its own costs and attorneys' fees." A true and accurate copy of the Stipulation of Dismissal is attached hereto as Exhibit 3 and incorporated herein by reference.

35. Green Tree provided Mr. Bowen a reinstatement quote of $21,056.30 good through May 12, 2015. A true and accurate copy of the reinstatement quote is attached hereto as Exhibit 4 and incorporated herein by reference.

36. On May 8, 2015, Mr. Bowen hand delivered a check in the amount of $21,056.30 to counsel for Green Tree. A true and accurate copy of the cover letter, check, and confirming email are attached hereto as Exhibit 5 and incorporated herein by reference.

37. In a mortgage statement dated June 15, 2015, Green Tree acknowledged receipt of the $21,056.30 payment and reflected the terms of the loan modification in the regular monthly payment due. However, Green Tree attempted to collect $35.70 in "Total Fees and Charges Due." A true and accurate copy of the Mortgage Statement is attached hereto as Exhibit 6 and incorporated herein by reference.

38. Mr. Bowen made a payment of $966.37 to Green Tree on or around June 25, 2015.

39. In a mortgage statement dated July 14, 2015, Green Tree attempted to collect $35.70 in "Total fees and Charges Due." A true and accurate copy of the Mortgage Statement is attached hereto as Exhibit 7 and incorporated herein by reference.

40. Mr. Bowen made a payment of $966.37 to Green Tree on or around July 28, 2015.

41. Mr. Bowen contacted Green Tree to dispute the $35.70 charge.

42. Mr. Bowen retained counsel to assist him with his dispute.

43. Through counsel, on August 4, 2015, Mr. Bowen delivered a Qualified Written Request ("QWR") including a Notice of Error ("NOE") and Request for Information ("RFI") to Green Tree explaining that Mr. Bowen did not owe the fees and charges alleged owed. Green Tree received the letter on August 10, 2015. A true and accurate letter and proof of receipt is attached hereto as Exhibit 8 and incorporated herein by reference.

44. In a mortgage statement dated August 14, 2015, Green Tree attempted to collect $35.70 in "Total fees and Charges Due." A true and accurate copy of the Mortgage Statement is attached hereto as Exhibit 9 and incorporated herein by reference.

45. In a letter dated August 20, 2015, Green Tree determined the additional fees assessed would be removed from the loan. Enclosed with the letter was a document entitled "Advances" which shows a series of amounts paid from the account that include attorneys' fees, legal costs, filing fees, and foreclosure costs. A true and accurate copy of the letter and Advances enclosure are attached hereto as Exhibit 10 and incorporated herein by reference.

46. It is not clear whether such funds were ever refunded to Mr. Bowen's account.

47. On or around August 27, 2015, Green Tree delivered a notice to Mr. Bowen about their "new name." The letter stated that as of August 31, 2015, Green Tree and Ditech Mortgage Corp would be known as Ditech. A true and accurate copy of the letter is attached hereto as Exhibit 11.

48. In a mortgage statement dated September 7, 2015, Ditech reported only the principal, interest, and escrow payment of $930.67 due. A true and accurate copy of the Mortgage Statement is attached hereto as Exhibit 12 and incorporated herein by reference.

49. In a mortgage statement dated October 7, 2015, Ditech again attempted to collect $35.70 in "Total fees and Charges Due." A true and accurate copy of the Mortgage Statement is attached hereto as Exhibit 13 and incorporated herein by reference.

50. Mr. Bowen made a payment of $966.37 to Ditech on or around November 2, 2015.

51. Mr. Bowen contacted Ditech directly to dispute the fees again.

52. Mr. Bowen paid his counsel $50.00 to send another QWR, RFI, and NOE to try and resolve the problem.

53. On November 3, 2015, through counsel, Mr. Bowen delivered a second QWR with NOE and RFI to Ditech outlining why Mr. Bowen did not owe the alleged fees and costs and demanding Ditech adjust the account accordingly. Ditech received the letter on November 6,

2015. A true and accurate copy of the QWR and proof of receipt is attached hereto as Exhibit 14 and incorporated herein by reference.

54. Also on November 3, 2015, Mr. Bowen, through counsel, delivered a demand letter to Ditech pursuant to the Maine Unfair Trade Practices Act, 5 M.R.S. §213 outlining Ditech's failure to properly maintain Mr. Bowen's loan account and unfair conduct of attempting to collect amounts not owed. Ditech received the demand letter on November 9, 2015. A true and accurate copy of the demand letter and proof of receipt is attached hereto as Exhibit 15 and incorporated herein by reference.

55. In a mortgage statement dated November 7, 2015, Ditech again attempted to collect $35.70 in "Total fees and Charges Due." A true and accurate copy of the Mortgage Statement is attached hereto as Exhibit 16 and incorporated herein by reference.

56. Mr. Bowen made a payment of $966.37 to Ditech on or around December 1, 2015.

57. On December 4, 2015, Mr. Bowen's online Ditech account showed that his payments were being unapplied. Ditech also misstated that the next payment amount due was $823.57. A true and accurate copy of the screen shot is attached hereto as Exhibit 17 and incorporated by reference herein.

58. On December 9, 2015, Ditech delivered to Mr. Bowen, care of his counsel, a letter explaining that the advances that had been applied to the account before the modification took place were waived and there was a zero balance owed. Ditech promised to remove the fees and refund $142.80 to the account. A true and accurate copy of the letter is attached hereto as Exhibit 18 and incorporated by reference herein.

59. It is unclear whether the fees were ever refunded to the account.

60. In an Annual Escrow Disclosure Statement dated January 25, 2016, Ditech alleged that Mr. Bowen had an escrow shortage of $1,109.22 and escrow deficiency of $1,702.16. The alleged amounts owed would be charged over a 36 month period: $78 per month, making his new monthly payment $992.28. Ditech included a payment coupon for $2,811.38 for the alleged amounts due to escrow. A true and accurate copy of the Escrow Disclosure Statement is attached hereto as Exhibit 19 and incorporated by reference herein.

61. Ditech calculated the alleged escrow deficiency using amounts alleged owed from before the loan modification (July 1, 2013) and reinstatement of the loan (May 2015). The May 2013 entry on the Disclosure Statement shows a starting balance of $-3,763.20. *See* Escrow Disclosure Statement Exhibit 19.

62. On February 10, 2016, through counsel, Mr. Bowen sent a demand letter explaining the issues of the extra the payments taken from Mr. Bowen's account in the amount of $35.70 each and the inaccurate escrow disclosure.

63. Ditech acknowledge receipt of the demand letter in a letter dated February 22, 2016.

64. Ditech failed to apply Mr. Bowen's February payment in the amount of $930.67 to the loan and instead placed it in suspense because it allegedly did not constitute a "full payment."

65. Ditech reported a monthly payment due on March 1, 2016 of $992.28 on Mr. Bowen's online account. A screen shot of the account is attached hereto as Exhibit 20 and incorporated by reference herein.

66. In a monthly billing statement dated March 7, 2016, Ditech alleged an amount due of $1,984.56 which included current and alleged past due payments due in the inflated amounts of $992.28. A true and accurate copy of the Monthly Billing Statement is attached hereto as Exhibit 21 and incorporated by reference herein.

67. Mr. Bowen has made every payment due on time in the amount of at least $930.67 per the terms of the loan modification since reinstating his loan. Attached and incorporated by reference herein as Exhibit 22 is a print-out of Mr. Bowen's payment history from ditech.com.

68. In a letter dated March 17, 2015, Ditech stated that all maintenance has been completed on the loan to credit the overpayments and the escrow analysis was correct, including the alleged shortage and deficiency. Ditech admitted that $6,756.94 from the reinstatement amounts had been applied to past due escrow yet somehow the total negative escrow had not been included in the reinstatement quote. A true and accurate copy of the March 17, 2016 letter is attached hereto as Exhibit 23 and incorporated by reference herein.

69. The implementation of the loan modification along with the reinstatement payment should have brought the loan current. Any negative escrow alleged should have either been capitalized into the modification or provided for in the reinstatement quote.

70. Mr. Bowen's current annual real estate taxes and hazard insurance total $3,327.62.

71. According to the Loan Modification Clarity Commitment letter from Bank of America to Mr. Bowen dated May 30, 2013, $3,630.70 had been added to the loan balance to calculate the new modified loan balance. A true and accurate copy of the Commitment Letter is attached hereto as Exhibit 24 and incorporated herein by reference.

72. The May 6, 2015 reinstatement quote and Mr. Bowen's payment thereof included 23 payments of principal, interest, and escrow (taxes and insurance). The escrow portion of the payments would total $6,756.94 (23 x $293.78). *See* Loan Modification Exhibit 2  Ditech admitted that such amounts were applied to the past due escrow amounts. *See* the March 17, 2016 letter, Exhibit 23.

73.     Any escrow amounts advanced before the effective date of the loan modification, July 1, 2013 or the date of the reinstatement, May 2015 were or should have been included in the modification and/or reinstatement.

74.     Ditech accounted for $10,387.64 in alleged escrow owed through the modification and reinstatement.  *See* Loan Clarity Commitment Exhibit 1; Reinstatement Quote Exhibit 4; March 17, 2016 Ditech letter, Exhibit 23.  That would have been enough to cover at least three years of advanced escrow for taxes and insurance.

75.     The monthly payments Mr. Bowen made from June 2015 after the reinstatement of the loan to the date of the escrow analysis, would not leave a deficiency nearly in the amount of $-1,702.16 or shortage of $-1,109.22 as alleged by Ditech.    *See* Disclosure Statement, Exhibit 19.

76.     Mr. Bowen made the payments in the amount of $930.67 per the "Regular Monthly Payment" represented due by Ditech in monthly mortgage billing statements from June 2015 through November 2015.  *See* Exhibit 22.

77.     According to Ditech's numbers in the March 17, 2016, letter, Exhibit 23, Mr. Bowen's escrow payment should be $323.52 which includes a two month "cushion."  With the principal and interest payment of $636.89 per the modification, the total monthly payment should be $960.41 not $992.28. *See* Disclosure Statement, Exhibit 19; March 17, 2016 letter, Exhibit 23; Loan Modification, Exhibit 2.

78.     Mr. Bowen made a payment of $960.41 for the month of April 2016 to Ditech and plans to continue to make monthly payments in that amount. .

79.     Ditech's conduct outlined above constituted a pattern and practice of mismanagement of the loan, misrepresentations of amounts owed and the status of the loan, and failure to take corrective actions after notice of such errors.

80.     Ditech did not have proper policies and procedures in place to manage Mr. Bowen's loan including calculation of escrow and monthly amounts owed after the reinstatement of the modified loan.

81.     As a result of Ditech's conduct, Mr. Bowen has experienced severe emotional distress. During the conduct alleged in the previous matter against Green Tree, Mr. Bowen began taking medication to help him sleep and deal with the anxiety caused by Green Tree's conduct and the fear that he might lose his home.  After the settlement of the first matter with Green Tree, it took Mr. Bowen some time to feel relieved and trust that the loan was now current.  It was not one month after his reinstatement of the loan that Green Tree started attempting to collect on alleged Fees and Charges from Mr. Bowen.  When Green Tree eventually admitted its mistake in August 2015 after Mr. Bowen and his counsel's efforts to resolve the issue, Mr. Bowen began to feel relieved again.  He did not refill his prescription for the anti-depressant/sleep medication. However, Green Tree and Ditech's continued collection of fees not owed and misrepresentations about amounts owed and the status of his loan made Mr. Bowen anxious and fearful again.  By the end of December into January 2016, Mr. Bowen felt increasingly anxious, depressed, and worried about his home.  He could not sleep and would lay awake wondering how this could be happening again and if he might really lose his house this time.  He had to take time off from work and at times, struggled to get out of bed.  He spent less time with his children and became irritable and short tempered.  Mr. Bowen became afraid that there would be a knock on the door from the sheriff with another foreclosure complaint even though he was making every payment on time each month as agreed.  He worried about his children and losing the home.  He started on the anti-depressant, sleep medication again in February 2016 but still constantly worries about his home.  He checks his account daily and pours over his statements and notices wondering

what went wrong. He has lacked focus at work and with his family because he is constantly plagued with the thought of losing his home.  He just could not believe that or understand why Ditech was mishandling his loan again.

### V. CLAIMS

#### COUNT I
#### Fraud/Fraudulent Misrepresentation

82. Mr. Bowen realleges each and every preceding allegation set forth in the above paragraphs as if fully set forth herein.

83. Ditech misrepresented amounts due on Mr. Bowen's loan including fees and charges; the total amounts due; alleged escrow shortages and deficiency; the regular monthly payment; past due amounts; and the past due status of his loan when they knew or should have known that Mr. Bowen had modified and reinstated the loan to bring all amounts current.  *See* Exhibits 6, 7, 9, 12, 13, 16, 17, 19, 20, 21 and 22.

84. Mr. Bowen acted justifiably in reliance on Ditech's misrepresentations when he paid Ditech extra money he did not owe at that time to pay at least four inflated payments of $966.37. Such reliance was to his detriment as he paid $142.80 he did not owe at that time.  *See* Exhibit 22.

85. Mr. Bowen also relied on Ditech's misrepresentations when he made the $930.67 payments that Ditech stated were due in his monthly statements which ultimately resulted in harm to him with Ditech alleging that Mr. Bowen had a shortage and deficiency in his escrow, owed $2,811.38, and was past due because the $930.67 payment was not a full payment.  *See* Exhibits 6, 7, 9, 12, 13, 16, 17, 19, 20, 21 and 22.

86. Ditech's misrepresentations have directly led to Mr. Bowen's account being placed in a past due status and has caused Mr. Bowen severe emotional distress worrying again whether or not he will lose his house.

87. Ditech's repeated mismanagement of Mr. Bowen's loan after settlement for similar conduct, reinstatement of the modified loan bringing the loan current, repeated notice of the issues from Mr. Bowen and counsel, agreeing to correct the account in August 2015 and then trying to collect on the inflated amounts again in October 2015, and then miscalculating the escrow account, alleging $2,811.38 due when Mr. Bowen had made every payment on time as sought, and then placing the loan in past due status for failure to apply the payment of $930.67 they sought is so egregious and outrageous as to imply malice. *See* Exhibits 4, 8, 10, 14, 15, 18, and 23.

88. WHEREFORE, by reason of said violations, Mr. Bowen is entitled to actual, consequential and punitive damages; court costs; reasonable attorney's fees; and any and all other relief permitted by law.

## COUNT II
## Violation of the Maine Unfair Trade Practices Act 5 M.R.S.A. §205-A et seq.

89. Mr. Bowen realleges each and every preceding allegation set forth in the above paragraphs as if fully set forth herein.

90. Ditech engaged in unfair and deceptive trade practices including but not limited to:

   a. Collecting fees and charges from Mr. Bowen's account that had been resolved with the reinstatement of the modified loan;

   b. Stating that the collection of fees and costs would stop and then trying to collect those same costs and fees two months later;

   c. Misrepresenting inflated amounts due for the monthly payment;

      d.      Failing to apply and calculate escrow amounts;

      e.      Misrepresenting inflated amounts due for the alleged escrow shortage and deficiency or in the alternative, if the escrow amounts alleged were correct, failing to include such amounts in the modified loan or reinstatement of the modified loan; and

      f.      Stating that the monthly payment amount was $930.67 but then placing that amount in suspense and not applying it to the loan and alleging Mr. Bowen's account as past due.

91. Such conduct could not reasonably be avoided by Mr. Bowen as he had no control over Ditech's processes and policies. He tried to correct the issues himself and then through counsel but to no avail.

92. Such misrepresentations regarded material terms of the loan, amounts owed and status of his loan and misled Mr. Bowen to his detriment into paying an extra $142.80 on the loan he did not owe at that time and paying the monthly amount alleged owed of $930.67 that later led Ditech to claim it did not constitute a full payment and place the loan in past due status.

93. WHEREFORE, by reason of said violations, Mr. Bowen is entitled to equitable relief, actual and consequential damages; court costs; reasonable attorney's fees; and any and all other relief permitted by law.

## COUNT III
## Violation 32 M.R.S.A. §11001 et seq.: Maine Fair Debt Collection Practices Act

94. Mr. Bowen realleges each and every preceding allegation set forth in the above paragraphs as if fully set forth herein.

95. Ditech, as servicer of the subject loan that took on servicing of the loan when it was in default, is a debt collector and is subject to the Maine Fair Debt Collection Practices Act ("Maine FDCPA").

96. Within one year prior to the filing of this suit, and ongoing for more than one year prior, by example only and without limitation, Ditech violated the Maine Fair Debt Collection Practices Act 32 M.R.S.A. § 11001 et seq. as outlined fully above by, including but not limited to, the following conduct:

a. The use of false representations or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer: 32 M.R.S.A. §11013(2); *See* Exhibits

b. The false representation of the amount of the debt: 32 M.R.S.A. §11013(2)(B)(1); *See* Exhibits

c. Engaging in conduct, the natural consequence of which was to harass, oppress or abuse Mr. Bowen in connection with the collection of the mortgage debt by delivering notices seeking payment of monies not owed, misapplying payments, and wrongly placing the loan in past due status: 32 M.R.S.A. § 11013(1)); *See* Exhibits 6, 7, 9, 12, 13, 16, 17, 19, 20, 21 and 22, and

d. The use unfair or unconscionable means to collect or attempt to collect any debt: 32 M.R.S.A. §11013(3). *See* Exhibits 6, 7, 9, 12, 13, 16, 17, 19, 20, 21 and 22.

97. Ditech's conduct caused Mr. Bowen actual damages in the form of monies paid to Ditech that were not due at the time, paying amounts alleged by Ditech that resulted in the loan being placed in past due status, and severe emotional distress as described above around experiencing such conduct again and potentially putting his home at risk again.

98. WHEREFORE, by reason of said violations, Mr. Bowen is entitled to relief including statutory, actual, compensatory, consequential, and emotional damages; court costs; reasonable attorney's fees; and any and all other relief permitted by law.

## COUNT IV
### Violation 15 U.S.C. § 1692 et seq.: Fair Debt Collection Practices Act

99.  Mr. Bowen realleges each and every preceding allegation set forth in the above paragraphs as if fully set forth herein.

100.  Ditech, as servicer of the subject loan that took on servicing of the loan when it was in default, is a debt collector and is subject to the Fair Debt Collection Practices Act ("FDCPA").

101.  Within one year prior to the filing of this suit, and ongoing for more than one year prior, by example only and without limitation, Ditech violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. as outlined fully above by, including but are not limited to, the following conduct:

   a.  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer: 15 U.S.C. § 1692e(10); *See* Exhibits 6, 7, 9, 12, 13, 16, 17, 19, 20, 21 and 22;

   b.  The false representation of the amount of the debt;: 15 U.S.C. § 1692e(2); *See* Exhibits 6, 7, 9, 12, 13, 16, 17, 19, 20, 21 and 22;

   c.  Engaging in conduct, the natural consequence of which was to harass, oppress or abuse Mr. Bowen in connection with the collection of the mortgage debt by delivering notices seeking payment of monies not owed, misapplying payments, and wrongly placing the loan in past due status: 15 USC § 1692d ; *See* Exhibits 6, 7, 9, 12, 13, 16, 17, 19, 20, 21 and 22and

   d.  The use unfair or unconscionable means to collect or attempt to collect any debt:15 USC §1692f. *See* Exhibits 6, 7, 9, 12, 13, 16, 17, 19, 20, 21 and 22.

102.  Ditech's conduct caused Mr. Bowen actual damages in the form of monies paid to Ditech that were not due at the time, paying amounts alleged by Ditech that resulted in the loan being

placed in past due status, and severe emotional distress as described above around experiencing such conduct again and potentially putting his home at risk again.

103.   WHEREFORE, by reason of said violations, Mr. Bowen is entitled to relief including statutory, actual, compensatory, consequential, and emotional damages; court costs; reasonable attorney's fees; and any and all other relief permitted by law.

## COUNT V
### Violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et. seq.

104.   Mr. Bowen realleges each and every preceding allegation set forth in the above paragraphs as if fully set forth herein.

105.   On April 3, 2015, Mr. Bowen, through counsel, delivered via registered mail to Green Tree's designated address a Qualified Written Request (QWR), Request for Information (RFI) and Notice of Error (NOE) pursuant to Sections 1024.35 and 36 of Regulation X (12 CFR 1024)

106.   Green Tree received the QWR on August 10, 2015.

107.   Pursuant to 1024.36(c), Green Tree was to acknowledge receipt of the request within five days of receipt.  Green Tree did not.

108.   Failure to comply with 12 CFR 1024.36 is governed by 12 U.S.C. §2605(f).

109.   On August 20, 2015 Green Tree admitted the error and promised to correct the error by removing the alleged fees and charges from Mr. Bowen's account. *See* Exhibit 10.

110.   However, beginning in October 2015, Green Tree again started to collect the additional $35.70 per month in alleged fees and charges.  *See* Exhibits 13 and 16.

111.   Mr. Bowen retained and paid his counsel $50.00 on October 23, 2015 to deliver another QWR and NOE in an attempt to correct the errors.

112.    On November 3, 2015, Mr. Bowen, through counsel, delivered via registered mail to Ditech's designated address a Qualified Written Request (QWR), Request for Information and Notice of Error pursuant to Section 1024.36 of Regulation X (12 CFR 1024)

113.    Ditech received the letter on November 6, 2015.

114.    Ditech did acknowledge receipt of the QWR in a letter dated November 9, 2015 stating they would investigate the inquiry and would respond in 30 business days.

115.    On November 7, 2015 Ditech again tried to collect on the $35.70 charge. *See* Exhibit 16.

116.    On December 4, 2015, Mr. Bowen's online account showed an amount due that again included the $37.50 charge. *See* Exhibit 17.

117.    On December 9, 2015 Ditech stated in a letter to Mr. Bowen that it was still researching the request but did not say when they would provide a response. *See* Exhibit 18.

118.    In a letter dated December 9, 2015 Ditech again admitted it had inadvertently charged Mr. Bowen's account an extra $142.80 and the amount would be credited to the account and the fees and charges removed. *See* Exhibit 18.

119.    Ditech had not corrected the error.

120.    Ditech then alleged inflated amounts due for an escrow shortage and deficiency and increased Mr. Bowen's monthly payment. *See* Exhibits 19, 20, and 21.

121.    Ditech failed to apply Mr. Bowen's payment of $930.67 in March 2016, considering it a partial payment and placed the loan in past due status. *See* Exhibit 21.

122.    Ditech's at least four repeated failures to comply with RESPA constitutes a pattern and practice of noncompliance. First, Green Tree failed to acknowledge receipt of the first QWR within five days of receipt. *See* Exhibit 8. Second, beginning in October 2015, Green Tree again started to collect the additional $35.70 per month in alleged fees and charges evidencing their

19

failure to correct the error.  *See* Exhibit 13.   Third, on November 7, 2015 Ditech again tried to collect on the $35.70 charge evidencing a continued failure to correct the error.  *See* Exhibit 16.  Fourth, on December 4, 2015, Mr. Bowen's online account showed an amount due that again included the $37.50 charge evidencing a continued failure to correct the error. *See* Exhibit 17.

123.	Ditech's conduct caused Mr. Bowen severe emotional distress as detailed above.

124.	WHEREFORE, by reason of said violations, Mr. Bowen is entitled to relief including statutory, actual, compensatory, consequential, and emotional damages; court costs; reasonable attorney's fees; and any and all other relief permitted by law.

## **JURY DEMAND**

Mr. Bowen demands a jury trial of all issues properly triable thereby.

Dated this 5th day of April 2016.

               MOLLEUR LAW OFFICE


               /s/ *Andrea Bopp Stark*_____
                Andrea Bopp Stark, Bar #8763
                Molleur Law Office
                419 Alfred Street
                Biddeford, ME 04005-3747
                207-283-3777